UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANNIE HARRIS, <br><br> Plaintiff, <br><br> v. <br><br> COOK COUNTY, <br><br> Defendant. | No. 24 CV 957 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff Jannie Harris was a nurse with Cook County Health for over five years before the COVID-19 pandemic began. She is also a Christian and a member of the Hope Community Advent Chirstian Church. When Cook County Health implemented a mandatory vaccine policy in August 2021, Harris sought an exemption based on her religious beliefs. The exemption was denied. After she tried and failed to find a remote position, she was terminated for violating the policy. She now brings a claim for religious discrimination under 42 U.S.C. § 2000e. Cook County moves for summary judgment, and for the reasons discussed below, summary judgment is granted.

I.  **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-

moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). I view all the facts and draw reasonable inferences in favor of the non-moving party. *See Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1141 (7th Cir. 2023). The court gives the non-moving party "the benefit of reasonable inferences from evidence, but not speculative inferences in [her] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted).

Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts." *Kreg Therapeutics, Inc. v. VitalGlo, Inc.*. 919 F.3d 405, 415 (7th Cir. 2019). The moving party must file a supporting memorandum of law and statement of facts demonstrating that it is entitled to judgment as a matter of law. *See Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014); N.D. Ill. Local R. 56.1(a). The non-moving party may respond with its own statement of facts, but any facts presented in a response to defendant's statement of facts are considered only to controvert the asserted fact; they are not considered independently. *See Woods v. Von Maur, Inc.*, 837 F.Supp.2d 857, 863 (N.D. Ill. 2011). All material facts set forth in the moving party's statement that are not controverted by a statement of the opposing party will be deemed to be admitted. N.D. Ill. Local R. 56.1(b)(3). If a party disputes a statement, it must point to specific evidence in the record to support its contention. *Id.*

**II.     Facts**

Defendant Cook County is responsible for operating Cook County Health, one of the largest public health systems in the country. [27-1] ¶ 2.[1] CCH has nearly 6,000 employees and provides a range of healthcare services to the community, including through the operation of John H. Stroger Jr. Hospital. [27-1] ¶ 2. As a healthcare provider, CCH has a responsibility to provide the safest care possible for patients. [27-1] ¶ 17.

COVID-19 is a contagious disease that can result in serious illness and death. [27-1] ¶ 7. In March 2020, the World Health Organization declared COVID-19 as a pandemic and the United States declared a national emergency. [27-1] ¶ 8. Throughout the pandemic, healthcare workers were at greater risk than the general public of contracting COVID-19. [27-1] ¶ 11. Between 2020 and 2022, the increase in COVID-19 cases put a strain on hospitals, including CCH, which were already dealing with staffing challenges. [27-1] ¶ 10. By 2022, CCH had cared for over 2,000 hospitalized COVID-19 patients. [27-1] ¶ 15.

CCH took steps to promote safety at its facilities. [27-1] ¶ 12. CCH made certain personal protective equipment available to all staff, provided masks to all

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page and line numbers. Citations to video recordings use the minutes and seconds according to the digital file uploaded to the docket. The facts are largely taken from the parties' responses to their adversary's Local Rule 56.1 statement of facts, [27-1] and [29], where both the asserted fact and the opposing party's response are set forth in one document. Any asserted fact that is not controverted by reference to specific, admissible evidence is deemed admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009).

3

people entering the facility, required staff to wear N95 masks when providing direct patient care, and more. [27-1] ¶ 13. CCH also had various policies requiring employees to obtain vaccination from infectious diseases. [27-1] ¶ 18.

By January 2021, the Food and Drug Administration issued an Emergency Use Authorization for the Pfizer and Moderna COVID-19 vaccines. [27-1] ¶ 20. In March 2021, the Centers for Disease Control issued a study showing that the vaccines were effective in preventing infections among healthcare personnel. [27-1] ¶ 21.

Based on public health guidance, in August 2021, CCH implemented a policy requiring staff members to receive a COVID-19 vaccine or an exemption or deferral of the requirement due to a medical condition or sincerely held religious belief. [27-1] ¶¶ 24–25. The policy stated that compliance was a condition of employment and failure to obtain the required vaccine could result in termination. [27-1] ¶ 27. In September 2021, CCH's leadership team determined that exemption requests could only be granted to employees who could perform their duties on a fully remote basis. [27-1] ¶ 30.

Plaintiff Jannie Harris began working at Stroger Hospital in 2014. [26-2] at 25:16–19. She was a nurse in the oncology department when CCH instituted its vaccination policy. [27-1] ¶ 48. Harris was responsible for assessing and monitoring patients, administering blood transfusions and injections, and occasional phlebotomy duties. [27-1] ¶ 52. On an average day, she interacted with at least 30 patients, as well as her supervisor, other nurses, physicians, and medical technicians. [27-1] ¶¶ 56, 59. Her job duties had to be performed in person. [27-1] ¶ 61.

4

Shortly after CCH announced its mandatory vaccination policy, Harris submitted a request seeking an exemption. [26-7]. Her request cited 2 Corinthians 7:1, which states: "Since we have these promises, beloved, let us cleanse ourselves from every defilement of body and spirit, bringing holiness to completion in the fear of God." [27-1] ¶ 66. Harris is a Christian and a member of the Hope Community Advent Christian Church. [27-1] ¶ 64. She did not know the church's stance on vaccines, but a pastor nonetheless signed her exemption request. [27-1] ¶¶ 64–65. Harris believes that God created her immune system to protect her from illnesses and that the vaccine conflicts with this belief. [27-1] ¶ 62.

In September 2021, CCH Equal Employment Opportunity Director Nicholas Krasucki sent Harris a letter denying her exemption request. [27-1] ¶ 70. The letter explained that "unvaccinated personnel poses a threat to the safety of our patients, staff, visitors and [Harris], and exempting [Harris] from the CCH vaccination requirement would compromise workplace safety, infringe upon the rights of our workforce, patients, and visitors, and otherwise would pose an undue hardship to CCH." [27-1] ¶ 70. The letter also informed plaintiff that, effective October 1, 2021, unvaccinated employees would not be permitted to work on site. [27-1] ¶ 71.

Harris did not obtain a vaccine. CCH granted her a 90-day unpaid leave to seek another position within CCH. [27-1] ¶ 73. Following a pre-disciplinary hearing in April 2022, CCH terminated Harris's employment for failing to comply with its policy. [27-1] ¶ 77.

While the above facts are undisputed, the parties do dispute the circumstances surrounding another CCH employee, known as Sanitarian I. The parties agree that Sanitarian I was an employee in the Department of Public Health but disagree over when CCH became aware that this employee did not submit proof of vaccination. [27-1] ¶ 42.[2] The Cook County Department of Public Health is not located within Stroger Hospital. [27-1] ¶ 43. Sanitarian I did not seek a religious exemption and Human Resources did not determine whether her duties could be performed on a fully remote basis. [27-1] ¶ 45.[3]

Harris alleges that CCH's denial of a reasonable religious accommodation and her subsequent termination violated Title VII, 42 U.S.C. § 2000e. [11] ¶¶ 18, 22.

## III. Analysis

Title VII makes it unlawful for an employer to discharge any individual because of her race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). "Religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate to an employee's … religious observance or practice without undue hardship on the conduct of the employer's business." *Kluge v. Brownsburg Cmty. Sch. Corp.*, 150 F.4th 792,

---

[2] Viewing the facts in the light most favorable to Harris, I conclude that defendant was aware of the possibility of Sanitarian I's unvaccinated status beginning as early as October 2021, when she informed several people at CCH that she was taking place in a double-blind study. [29] ¶ 1.

[3] Defendant asks that I admit the entirely of Paragraph 45 due to plaintiff's failure to comply with Local Rule 56.1 in her response. [28] at 4. I agree that plaintiff's citations do not dispute the facts asserted in the paragraph and deem it admitted. N.D. Ill. Local R. 56.1(b)(3). I also disregard the additional facts presented by Harris in her response to Paragraph 42 of defendant's statement of facts. *See Woods*, 837 F.Supp.2d at 863.

802 (7th Cir. 2025). To prevail on a failure-to-accommodate claim, an employee must demonstrate (1) she had a sincerely held religious belief that conflicted with her employer's requirements; (2) she notified her employer of the belief; and (3) the need for a religious accommodation was a motivating factor for the adverse employment decision. *Id.* Once the employee makes this showing, the burden shifts to her employer to show that "any reasonable accommodation would result in undue hardship." *Id.* at 803.

### A. Sincerely Held Religious Belief

Defendant begins by arguing that plaintiff fails to connect her vaccination objection to her religious beliefs. [25] at 6–9. But plaintiffs "carry a low burden to establish that they truly hold certain beliefs" and need only show that their belief "is religious in the person's own scheme of things" and is sincerely held. *Kluge*, 150 F.4th at 811. Courts "are not and should not be in the business of deciding whether a person holds religious beliefs for the 'proper' reasons." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 452 (7th Cir. 2013); *see also Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 715 (1981) (noting that courts "should not undertake to dissect religious beliefs").

Harris has marshaled enough evidence for purposes of summary judgment to show that she had a sincerely held religious belief that prevented her from being vaccinated. In seeking an exemption, plaintiff cited a Bible verse. [27-1] ¶ 66. She testified that she believes "God created [her] immune system to protect [her] from illnesses. [26-2] at 76:3–5. Although plaintiff takes other forms of medication, she

7

requested exemptions from the flu vaccine for five straight years. [27-1] ¶ 69. Title VII does not "require perfect consistency in observance, practice, and interpretation when determining if a belief system qualifies as a religion or whether a person's belief is sincere." *Adeyeye*, 721 F.3d at 453. Plaintiff's willingness to risk serious job repercussions by declining the vaccine is also relevant evidence of sincerity. *See id.*

### B. Undue Hardship

Defendant next argues that exempting plaintiff from the mandatory vaccination policy would have caused an undue hardship for CCH's operations. [25] at 11–14. In the Title VII context, an undue hardship exists where the "hardship would be substantial in the context of an employer's business in the common-sense manner that it would use in applying any such test." *Groff v. DeJoy*, 600 U.S. 447, 471 (2023). Courts must consider all relevant factors, "including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of [an] employer." *Kluge*, 150 F.4th at 803. The employer bears the burden of showing "that any and all accommodations would have imposed an undue hardship." *Adeyeye*, 721 F.3d at 455.

Defendant has met its burden. Hardship is assessed in a common-sense manner and isn't limited to financial costs. The parties agree that CCH has a responsibility to provide the safest care possible for patients. [27-1] ¶ 17. They also agree that vaccination afforded employees with additional protection from COVID-19. [27-1] ¶ 22. Although plaintiff argues that it would not have been an undue

8

hardship for her "to continue doing what she had been doing" (such as masking and socially distancing), this is inconsistent with her admission that medical experts believed vaccination was the best way to keep people safe and reduce transmission of the disease. [27-1] ¶ 25.[4]

Plaintiff's job required her to interact with dozens of patients a day, in addition to other hospital personnel. [27-1] ¶¶ 56, 59. She has not produced any evidence suggesting that she was capable of performing her job on a remote basis. There is no genuine dispute that allowing Harris to continue working as a nurse without the required vaccine would have created an undue hardship for CCH's operations. The agreed-upon facts in this case establish that permitting plaintiff to continue interacting with immunocompromised patients while unvaccinated would have jeopardized their health. *See generally* [27-1].

Plaintiff attempts to counter defendant's evidence of undue hardship by pointing to a single employee who did not submit proof of vaccination and was nonetheless permitted to continue working. [27] at 10–11. But this employee—referred to as Sanitarian I—was employed by a different entity in a different position. [27-1] ¶ 42.

This case is different than *Adeyeye*, where there was evidence of the employer's high turnover and frequent use of temporary workers. *See* 721 F.3d at 455. Here, CCH was dealing with staffing *shortages*. [27-1] ¶ 10. CCH was also required to make

---

[4] It is irrelevant that defendant had allowed exceptions for the flu in the past. [27] at 10. COVID-19 was a national emergency. [27-1] ¶ 8. CCH implemented its inflexible policy based on the guidance of public health authorities. [27-1] ¶ 25.

9

high-stakes life-or-death decisions and was not merely considering factory productivity like the employer in *Adeyeye*. Harris has not provided any facts to establish whether Sanitarian I worked in person (or, if she did, whether she worked closely with patients and other staff members). [27-1] ¶ 45. Plaintiff has failed to establish that the evidence in the record suggests that other employees' circumstances disprove defendant's proffered undue hardship. *See Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013).

Plaintiff also cannot succeed on a disparate treatment theory. To establish a disparate treatment theory under Title VII, the plaintiff must show that (1) she is a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside her protected class were treated more favorably. *Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022). An employee is similarly situated when they are "directly comparable" to the plaintiff "in all material respects so as to eliminate all other possible explanatory variables." *Crain v. McDonough*, 63 F.4th 585, 592 (7th Cir. 2023).

Harris argues that the circumstances surrounding Sanitarian I are sufficient to prove disparate treatment. [27] at 15. Even taking as true that Sanitarian I was not vaccinated, defendant knew that she was not vaccinated, and CCH did not discipline Sanitarian I, plaintiff's theory still fails. Harris was a nurse working in person at Stroger Hospital. [27-1] ¶¶ 48, 50. Sanitarian I worked in the Department

of Public Health, which is not located within the hospital. [27-1] ¶¶ 42–43. There are no facts to establish that Sanitarian I was similarly situated to plaintiff.[5]

## IV. Conclusion

Defendant's motion for summary judgment, [24], is granted. Enter judgment in favor of defendant and terminate civil case.

ENTER:

                                               Manish S. Shah
                                               United States District Judge

Date: February 11, 2026

---

[5] I agree with the other courts in this district that have granted summary judgment on similar facts, including in cases where the plaintiff attempted to make an identical argument about Sanitarian I. *See, e.g.*, *Mason v. Cook County*, 2025 WL 2576811 (N.D. Ill. Sept. 5, 2025); *Flores v. Cook County*, 2025 WL 3688071 (N.D. Ill. Dec. 19, 2025).